May it please the Court. My name is Sean Newman. I represent the Independent Towers of Washington and the other appellants in this case. This is a fairly straightforward issue. It deals with whether or not federal law preempted certain Washington State towing industry regulations. I think it's important to first look at the federal law involved, which is the Federal Aviation Administration Authorization Act, which is at 49 U.S.C. 14501. That concerns federal authority over intrastate transportation and sets up three categories. It sets up, first, motor carriers of passengers, second, freight forwarders and brokers, and then motor carriers of property. And that has been interpreted to include tow trucks, my clients. That particular section, Section C, states that states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of any motor carrier. Then it gives three exceptions, and the common law recognizes another exception. The first exception is, quote, the safety regulatory of the state with respect to motor vehicles. Second, minimum amounts of financial responsibility relating to insurance requirements. Third, the authority of the state to enact and enforce a law, regulation, or other provision relating to price of for hire motor vehicle transportation by a tow truck, if such transportation is performed without prior consent or authorization of the owner or operator of the motor vehicle. That is more commonly known as non-consent tows. The fourth exception, which is not in the statute but is recognized in case law, is the market participant exception, where the state engages in contracts for towing services. I think it's extremely important when you analyze the state of Washington's regulations to understand, as this court, as Judge Brunetti indicated in Towsher, the purpose of the federal law, which is to deregulate. Now, what's interesting here is that after 1995, the state of Washington didn't change. They actually increased their regulations. One example of that in the paperwork I have is WAC 20491A-120. That was amended in 2002. What does it matter if they added more regulations, if they fit within one of the categories? Well, it matters in that whether or not the state is adhering to the intent of the Congress, which is to deregulate. The particular regulation I'm looking at, which is found starting in appendix 39, appendix 34, I should say, the department amended the rule to require that places of business, it provides that the state patrol mandates an operator will have personnel at the place of business to answer phones. They may not be forwarded except during lunch hour, et cetera. To answer your question, Your Honor, what difference does it make? It all goes back to whether or not the state has got the message, which is Congress wants to deregulate this industry. And as this court said in Towsher, the exception should be strictly construed. Congress had an edict. They said here are some very specific exceptions. And again, as in Towsher, what the Congress specifically sought to forbid and what Washington State has enacted is a de facto regulatory scheme, which regulates, in their own words, virtually the entire towing industry. Let me tell you where I am. Obviously, Towsher is clear, as amended by the city of Columbus, so that we now apply Towsher not only to the acts of the city, but safety regulations that would be enacted by counties, whatever. What I can't find out from your brief, maybe what I'm loose on, is what you are attacking and which sections specifically you're attacking, or if you're saying the whole act is violative of those principles in Towsher as modified by Columbus. You did a laundry list at the end of your brief. And I don't know if you want me to go back into the district court record and check that out there. But what am I supposed to do to determine? Because we have to go to each section and make an analysis. And the ones that are really troublesome are the ones where they talk about hours of operation, that sort of thing, or sort of an administrative thing, and then the questions that come under safety, whatever. So I'm not too sure which sections you want me to look at. Sure. I'll address that right now, Your Honor. I think before I address those sections, let me make it clear that the state law addresses really three categories of towers. You have the registered tow truck operators, which are my clients. Some of those are contracted with the state. And then you have people that aren't RTTOs who aren't registered. The problem with the state law, and I'm going to go into the sections, the problem is the state of Washington commingles the rules, especially under Chapter 46.55, where they say this applies to all RTTOs, and then they say, and if you're a contractor, there are some other things we're going to require. I don't understand what that has to do with Towsher. Are you suggesting that we can't sever? No, I say you can sever, I mean, unless you didn't Towsher. The real problem is I try to make a list of everything, and you didn't. So did I. You know, that was that, to be honest, and we may ask for a supplemental briefing, because you got, I got pages of regulations and facts here. And I go through there, and I say, okay, well, some of these rates really relate to the state's role as a marketplace. You're a participant when you have the contract towing, for example. And so I have to put those over here. And then I see some others, and I say, well, I wonder why the bond requirement isn't an insurance requirement. But then I wonder why some recordkeeping requirement isn't maybe outside of the exceptions. You see what I'm saying? No, I know exactly what you're saying. And so what you've handed us, and so I try to go through, as Judge Fletcher did, and analyze each of these, and it's pretty hard to do, so it's hard to have an argument in the abstract. Actually, I bet the state could stand up, and we would all agree. We would agree that Towsher controls, that these are the exceptions. What we disagree, or what you probably disagree with the state over is what falls in what box. Sure. Exactly, Your Honor. Okay, so in your short time remaining then, maybe you can pick some of the ones that bother you the most and tell us what box they do or don't do. I'd be happy to do that. Why don't you tell me why we should do that, if you didn't agree with it? If you didn't tell us, why should we do that? Go ahead and show us what you've got. Okay. Well, why should you do it? First of all, this is de novo review. I have the Towsher case, and if you look at the purpose of the federal law, the complication here is that, as you indicated, the rules themselves commingle what RTTOs are required to follow and what RTTOs on contract are required to follow. And I'll point out some very specific ones that are probably the most agreed to. I mean, since he doesn't inquire for an Excel spreadsheet. Exactly. Yeah, perhaps. He can't give us that. I'm sorry. Well, let me point out a few. RCW 46.55.040. That requires inspection of facilities and a master log of all impounds. That's 46.55.040. And as indicated in one of the declarations, the state patrol has authority to do spot checks if you have a master log. If you don't, you're penalized. And this is different than Towsher in that you're not penalized simply by being removed from the list. You're penalized by a criminal penalty, a traffic infraction of at least $250. So I think, as Judge Granetti indicated in Towsher, that the scheme here is quite a bit different. This is not simply removing somebody from the list. This is a criminal penalty of fine. So there's one. Another one, RCW 47.55.060, business location. This rule talks about signs, fencing, security, and business hours. RCW 46.55.063, fees, schedule, contracts, invoices. This applies to all fees for all services, dictates contents of private towing contracts and record-keeping requirements, dictates fees must be hourly, the storage fees, et cetera. Again, this is similar to, in the Towsher case, the Santa Ana Municipal Code, which required itemized statements. Then we have RCW 46.55.070, posting requirements. It may be a good consumer protection measure, but that doesn't fit within any of the exemptions. RCW 46.55.080, this is an example of how this is commingled. The title of this section is law enforcement impound, private impound. Requires a master log, but beyond that, prohibits certain associations. Applies to private impounds, limits their associations, has a record-keeping requirement. Again, a master log, all beyond any exemptions. We can go to RCW 46.55.160. Again, this is the availability of records, equipment, and facilities for audit and inspection. Exceeds any exemptions. Applies to all RTTOs, not simply those that are on contract. RCW 46.55.200, these are the penalties section. Again, this may be a good consumer protection measure, but applies to private impounds as well. I can jump to the WACs. Two examples, again, are the WAC 204-91A-120. This is the business office hours and records, which was just amended in 2002. Require operators to have someone at the place of business to answer phones. They may not be forwarded at any time except over the lunch hour. I remember that one. The government argues that was a safety issue. And you didn't have anything in your briefs we could help you with, but that is not a safety issue because people are out on the road. They need to get their cars. They have to be able to contact somebody. That's the government argument. Well, I realize that. I mean, the government's argument is to take a broad interpretation of the exceptions. You take a broad interpretation of the exceptions, too. Well, it's true. I mean, because I view the exceptions as limitations. I look at the purpose of the federal law was to deregulate, and the exceptions should be strictly construed. If you broadly construe the exceptions, allow for a loophole big enough for a tow truck to go through, the purpose of the federal law is eviscerated. Why don't you directly answer Judge Bernatti's question, which is safety as related to the hours of operation because somebody stranded out there. Sure. And you don't want people stranded out there with you. I understand that argument, but if you look at the provision in the statute, it says concern safety with respect to motor vehicles. That's what it says, motor vehicles. I realize this section in the law applies not only to tow truck operators. The federal law governs any other motor carrier property. So, for example, UPS or some other motor carrier property, whoever that may be, UPS, FedEx, whatever. So if you say, I view it very strictly, safety, what they say, safety of motor vehicles, meaning the tow truck, they can require it to have lights or bumpers or whatever they need. When you get beyond that and say, well, really, that means consumer protection. That really means something beyond that. Consumer protection is different from personal protection. I understand that. And if you're talking about like being out on the highway and like nobody's home. Sure. That means you've got, in effect, a pedestrian on a highway or a safety risk. Why isn't that one that would fall within? Again, I go back to the statute. It talks about safety of, quote, motor vehicles. That's what it talks about. It doesn't say safety of consumers or safety of patrons. It doesn't say safety of customers. It says safety of motor vehicles. In our application for this new argument, are you saying that we should look at the sections, that you did want to enlist a section because of what you talked about here, that we should look at those sections and if we can't find specific reference in the statute to the one of the exceptions so that they're drawn immediately in there, safety, the office is going to be open for safety reasons, blah, blah, blah. Then they're going to have to be knocked out under tow truck exemption position. My position is that the permit scheme itself is like tow truck. You decided in tow truck that the permit scheme was problematic. It was saved by a severability clause. I mean, the reality is that I don't. We understand that. We're going to sever. I think we all agree also, probably the government too, that there's a severability here. The question is we have to go through each one of the things on the laundry list, and I'm asking you if we should make a general approach. Well, if you don't have something specific on an item, office hours, it says office hours are open for safety purposes, then they're going to violate the tow truck principles. Well, I don't think, let me first answer the question by saying, I don't think by merely saying it's for safety means it's safety. I think otherwise, again, it would be a loophole that anything would go. We will have to analyze each one of those and determine in our own mind whether there's a safety issue. We'll take into account, of course, what the government says, like somebody stranded on the highway, and then we'll make a decision saying, well, we don't think that's safe. Well, I think you have to look at the language of the rule. Again, when I apply the analysis here, I view the federal law as creating a checklist, and to apply that checklist to the state's rules, which would have to be done in a de novo review, unfortunately, is that do they fall within an exception? They may be great rules. There's no doubt about it. I understand your point about the stranded motorist who, and there was a case out of California which they cite. Well, I understand that, and I know the state cites a case out of California which contradicted Toucher and decided not to follow Toucher, which dealt with somebody who was ripping off a lot of people, and in one case they gave an example of the person who was stranded out there. I understand that. But the fact of the matter is the federal government made a decision to deregulate. They set forth very specific exceptions. The state of Washington has not changed the rules. They, in fact, added more rules. By complicating the analysis, because I can go in and argue, well, let's go through each rule, and I think this is not related to safety. Maybe it is. Maybe it's not directly or indirectly related. That's why we have a laundry list. That doesn't do us any good. Here, for example, right in the statute, it says you can't restrict the safety regulatory authority of a state with respect to motor vehicles. So in each one of these, we have to figure out is that, does it fall within that. We have to interpret what safety means, don't we? Correct, Your Honor, but we have to interpret it within the language of the federal law with respect to motor vehicles. When you want to restrict it to the safety of motor vehicles, we're talking about the effect of the motor vehicle on whoever is being hit by it or whose car is being towed or whatever. So you can't just say safety of motor vehicle. It's safety as it applies to a much broader. I understand your point of view, and I respectfully disagree because had Congress intended to cover customers and everything else, they would have said so. They just said safety of motor vehicles. That's what they said. So you think they're worried about the car, not the person. I believe if you realize that this particular rule applies to any freight carrier, I mean, I'm sorry, any motor carriers or property like UPS, like FedEx, it makes sense because the federal government can say, you don't want triple trailers out there. If you're going to have it, you've got to have certain lighting or brakes or whatever. That's what I think it applies to. I think they are looking at the motor vehicles engaged in intrastate commerce, not the customer. I mean, because if you follow that line of argument that, well, this protects the customer, then what about the customer who has freight on the motor carrier with the property owner, any property owner, whether it's I'm shipping something UPS and whatever, should states be able to regulate that? Probably not. Are you trying to say that your interpretation is that regulation, licensing, and management of motor vehicles and highways as far as the machines are concerned is typically a state function, so you want to limit it to that versus what the car will do when it gets out on the road relative to this act? Is that what you're trying to say? The licensure, as you said, the lights, the flashers, the seatbelts, whatever, even though there are federal laws on those, it's still excluded here as long as it's within the safety of a car or a vehicle or whatever. Is that what you're saying? I'm limiting my interpretation of what the... So the hours of office could never be extended then because that has nothing to do with... Safety. ...the regulation of a car or of a motor vehicle. Yeah, I don't think hours has any... I don't think hours falls within any exception. I don't think the state can mandate when a private business is open. At least I think I understand how you're trying to move on. Thank you. I'm going to save my wrist my time. All right. Good morning. May I please have a card, counsel? I'll first address your questions about... Could you state who you are? I'm sorry. I'm Diane McDaniel, Assistant Attorney General. I represent the State of Washington, Chief Service of the Washington State Patrol, and Fred Stevens, the Director of Licensing. Thank you. Counsel has kind of nailed down his position. He said that he reads the statute that says because it talks about that they would not interfere with the safety with regard to motor vehicle, that we should look to that only. And I do have a problem when I look at these statutes, as we did in torture, about the municipalities, understandably, are trying to regulate these tow trucks and the hours of operation and how you retain your car and what these cars and all that stuff. So how do you take his argument, and how would you interpret it? Because your argument, as I read it in your brief, was, well, the hours are important because if someone's stranded, they have to get their car and safety of the persons involved. It does relate to safety of motor vehicles, et cetera. That is my position, Your Honor. And I would look to the analysis that the Second Circuit gave in Ace Auto Body Towing. It addressed that very succinctly and I think took the appropriate interpretation of the exception for regulation pertaining to motor vehicle safety. Well, let's take another one because that's basically all we can do here today  Credit cards. What is for non-consensual tows, where does credit cards come in? Credit cards is a regulation relating to the price of transportation by a tow truck operator. It may help if we start with beginning analysis because the State disagrees with ITO's perception of how you analyze the preemption statute, how you analyze the exceptions to the general. Why don't you answer my question? Oh, I thought I did. I beg your pardon. So in your view, requiring tow companies to take credit cards is something the State can do? Yes, it is, Your Honor, because the manner of paying the price of a non-consensual tow is a regulation that relates to the price, and that is the exception. It is not just regulating the price, but the State may enforce regulations that relate to the price. Now, how do you get there? You may just say, but get me there. Yes, Your Honor. If you turn to 14-501C2C, which is the exception from the general rule of preemption, the preemption rule does not apply to the authority of a State to enact or enforce a regulation related to the price for hire motor vehicle transportation by a tow truck. Where are you reading that? In 49 U.S.C. 14-501C, sub 2, sub capital C. Sub capital C. That's the general non-consensual exception from regulation. Related to the price of for hire motor vehicle transportation by a tow truck. Well, the State may not enact a rule that affects price, route, or service. It can for non-consensual. Except for non-consensual. Yes, and all of RCW 4655 relates to non-consensual towing, and I think that is the first step that we have to get to is to look at this chapter. No, we're in non-consensual. That's right. So you're saying that where I am. But for those RCWs where consensual and non-consensual are combined, then would you agree we've got to look at each one separately? No, Your Honor, because they are not combined. Again, the State does not regulate consensual towing. This chapter is all about impounds, public impounds, private impounds, taking people's cars away from them without their prior authorization. That would include also a car that's hazardously in the road if somebody calls it, and a police cruiser finds it and has it in the roadway and calls it. So that would be included here. So they're all non-consensual. Exactly. With regard to subsection C, then, and the non-consensual related to the price, then the Visa card is related to the price because it's a way of paying the price. Exactly. So then it's an interpretation related to the price. I did not hear the last phrase. Excuse me. So then we have to determine that related to the price means the method of payment also. Yes, and so I'd like to turn to that, if I may. The way that the courts have interpreted the exceptions, it's not a strict interpretation. One looks to the primary purpose of the congressional preemption, and it wasn't mere deregulation, as Ito suggests. It was economic deregulation. Every circuit that has decided this, and the U.S. Supreme Court in the city of Columbus said that the purpose of Congress was economic deregulation. In fact, what the U.S. Supreme Court said was that that deregulatory purpose, the economic deregulatory purpose does not justify interpreting through a deregulatory prism aspects of the state's regulatory process that Congress determined should not be preempted. Here, Congress determined that historic police powers should not be preempted by the safety exception, by the insurance financial responsibility requirements, and by the non-consensual towing requirements. And then I want to point also how one interprets an act. We are, I think this Court has said that interpreting statutes is a holistic endeavor. It requires consideration of the entire statutory scheme in its entirety and reading each statutory provision with regard to the entire act, which it is a part. Here, I think if one starts with RCW 4655.010, the definitional sections, one will see that what we're talking about are persons who engage in impounds. We're not talking about people who are engaging in consensual towing. Now, it could be that an RTTO also does consensual towing, but nothing in this statute other than that, Section 025 deals with the towing industry at large. All towers in the state of Washington are required to have their tow trucks inspected. All towers in the state of Washington are required to have adequate insurance and financial responsibility. Those two requirements are permitted under C2A. So just to be clear then, your position is that anything that's under Chapter 4655 is a nonconsensual tow? Yes, Your Honor. And as long as it relates to, and it can relate to price servicing? Every provision that relates to the price charged, the record keeping, the master log, only impounds. That only applies to RTTOs. Those are people who impound. They're required to keep records. They're required to maintain business hours. They're required to have signs so that people whose cars are taken away from them know who to call. How do those fit into the exceptions, the signs, where to call, the hours, and all that stuff? Because they relate to the price of transportation. Transportation is... How does a record relate to price? I want to clarify, Your Honor, that it's not just the price of moving that vehicle. It is the price of transportation, and transportation is statutorily defined to include not only the movement of the vehicle, the actual towing, but also services related to that movement. Here, storage, the interchange of property and people, receipt, delivery. The way that signage relates to these matters is that when a person doesn't know who took their car, the price is increasing. The hours are... The clock is ticking. You lost me on that. I mean, under that theory, I can't think of anything that couldn't be regulated. I mean, it just seems like it would be 100 percent. Because everything that a tow truck operator does in the abstract has a trickle-down effect on something. So where do we go for your definition of transportation? That is in 49 U.S.C. 13-102. When I wrote the state's brief, it was sub-19. That's been amended now with that regard to the issues here, and it's now at sub-21. All right. Thank you. And, again, refresh me what that says, please. Yes. Transportation includes a motor vehicle, vessel, warehouse, wharf, pier, dock, et cetera, et cetera. Regardless of ownership or agreement, it includes a towing vehicle. So transportation includes the movement of any... I'll just start again. I'm sorry. A motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to movement of passengers or property or both, regardless of ownership or an agreement concerning use. That's sub-A. And then sub-B is services related to that movement, including arranging for receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property. That's what's covered by the statute and what the state is trying to regulate, right? That is what's covered under the exception for non-consensual towing. It includes... Exception? Well, no, the exception for non-consensual towing is in the federal statute. And you're saying it ties together? What I just read to you, Your Honor, was the federal statute. But I'm looking at... That's the statute. I'm looking, then, at Section 14.501 that we talked about before. You're saying that's the interpretation of that, which hasn't necessarily got to include all those other things. Yes, Your Honor, because when one uses a word in a statute that's been defined, then one applies that definition and not an ordinary dictionary definition. For a higher motor vehicle, transportation by a tow truck automatically then goes back and picks up all those ancillary items that you read there. Yes, Your Honor. And that's how you get in the books, the time, and whatever. Yes, Your Honor. And also that, I mean, and it relates to, again, it's not regulation of the thing. It's that the state may enforce regulations related to the thing. Here, the thing is the price of transportation. So, if you look at the general rule, it also uses the word related to it. The states cannot regulate related to a price, route, or service. And then the exception says the same thing, except that you can regulate related to. So, if you're going to give that broad, expansive reading to the general rule, using the same phrase, you should be giving the same broad, expansive reading to the related to. That's what the district court held as well. So, the crux of analyzing these statutes, at least 4655, which you say is not consensual, is whether it fits within the relating to the price. And that really comes down to how we construe price, correct? And transportation. And transportation. And then the other exception is going to be how we construe safety of a motor vehicle. Yes, that's correct. And your position is in accord with the cases which have said that includes the person who might operate that motor vehicle. Yes. And the ACE is not the only case to have applied that phrase broadly. As I believe Cole, which was cited in my supplemental, also dealt with similar kinds of regulatory standards that the state of Washington has. And that court also held that they were within the exceptions to preemption. I think that the other side of that is that you would interpret relating to the price, even though the transportation definition includes all these other facets, that the relating to the price would go to the economic side, even if you could bring in a credit card. The question is can you then go into the books that record the price, the books that keep track of where it goes. The narrow view would go that far because that has nothing to do with regulating the price. What it has to do is keeping records relating to the price. I think that's very accurate, Your Honor. The state is allowed this area in which to regulate. Congress did not intend to tie the state's hands and give it no means to carry out those regulations. The other dialogue that we've engaged in these cases is if we don't try to do consumer protection, how do you divide those up? In other words, it could be that you slide this out to the point of record keeping and the rest of that may go into a consumerism type area versus regulating the price. Again, Congress intended to have states not. Well, I'm not talking about what Congress intended. We have talked about it in culture otherwise that we don't intend to protect consumers. Well, Congress did intend that states can regulate the price of transportation. I understand that, but when you get away from the definite price, it's not like you can charge 50 bucks to tow a car, and you can use a credit card, or you can have cash to fill checks. When you go to the next step and say you'll keep records and do the rest of this, why is it that within our decisions in the Ninth Circuit, more of a consumer protection versus a price which you may want to include what Congress did but not what we included in culture? I think I understand your question. I'll try to address it. Economic protection, consumer protection of citizens was intended by this exception to the. . . All you're telling me is we've spent. . . You're just talking about torture, too, because I think that torture was kind of pretty tight. But I'll go back and reread my own words. I guess I'm still having some trouble with the credit card. You know, unless you have a situation where your prices are getting jacked up because you're taking a cut on the credit card, a price is a price. And so I'm having trouble really understanding, even though it's part of the economic transaction, why it is part of the price. The price is $100. What does it matter if I pay by credit card or check? Well, if towers will. . . RTTOs will only accept cash, people. . . Non-consensual tow situations, people don't anticipate that their cars are going to be towed. And that's another reason why the signage requirement is there, because people may be misled if signs aren't there. They see other cars there. They may think it's after hours and they're entitled to park there, for example. And they may not be anticipating the extra expense. In this modern age, everyone seems to have the credit card. That isn't really the price of the tow. It's related to the price of the tow, and that's what's allowed, Your Honor. But how is it related to the price of the tow? Because tows still cost the same. It's the method of paying the price. I wanted to spend just a minute talking about the permit requirement. You haven't asked, but everything in ITO's brief calls this an illegal permit scheme, and I wanted to distinguish what the state does here from what happened in Tosha, for example, and in other states that have had a permit requirement struck down. The only persons who need to get a permit in the state of Washington are those who engage in nonconsensual tows. It's a method of knowing who is conducting nonconsensual tows so that the price can be regulated. If a person engages in only consensual towing, nothing is required of that tower other than the standard insurance and Tosha inspection. I want to spend a minute talking about the patrols regulations. They are very clearly related to safety in almost everything that is addressed here in their regulations, but they also fall under the market participant exception. Which regulations are you talking about? The patrols regulations are in the Washington Administrative Code. Yes. And I want to point out that they make specific provision for people to have consensual tows, so even though you may, if your car is in an accident or disabled and you have insurance, you have towing insurance, you belong to AAA, for example, you can tell the patrol to call that number for you and then that person can come out and tow you. That's a consensual tow and the state doesn't regulate it. If an RTTO responds to that consensual tow request, it doesn't affect the rotation place of the RTTO, so that RTTO could come on the next call for the rotation list. There are many ways for consumers to utilize their own market participant activity here. Vehicles that are stalled are – I'm in negative time, I'm sorry. Thank you. Vehicles that are stalled on the highway, if they don't pose an immediate safety threat, are marked. They're there for 24 hours so that the driver or owner can arrange to have that vehicle towed consensually. Thank you. Thank you. Your Honors, very briefly, I think Judge Brunetti hit the nail on the head. In Towsher, you cut it pretty tight and that was correct because what the federal law says, deregulate, here are some exceptions, read them strictly, do they apply or not? Does the state regulate consensual tows? Actually, they do. That WAC 204-91A-140 governs all towing fees, mandates flat hourly rate and goes on to say, talk about secondary tows. Help me again, that WAC section. WAC 204-91A-140. 140. And my point simply is here, it talks about secondary tows, and what secondary tows are is that your car is towed to a lot, you come and say, can you tow it to my house? That's a consensual tow. They regulate that. I think the key problem we have with the state's regulatory scheme is what Judge McGowan, which you pointed out, is everything relates to economics. Everything relates to economics, if you want it to. The signs, the records, the fact you have to have somebody there eight hours a day, you can't forward your phones, arguably everything relates to economics. But if you take that broad approach to reading the exceptions, the exceptions swallow up the rule. There won't be any. I mean, as you pointed out, can you think about a rule that a state or a municipality could impose on a tow truck operator or, again, any freight hauler that wouldn't relate to price, that wouldn't relate to price, or arguably wouldn't relate to safety? Safety of who? Again, as you pointed out, Your Honor, Congress did not intend this to be a consumer protection measure. I want to go back to what you said just a minute ago because I want to make sure I understood your statement. I thought the state said that this particular statutory provision related to nonconsensual tows only, so that's all we're dealing with. You said, but the statute does relate to consensual tows. Let me make that answer your question clearly. Chapter 46.55 applies to all towers. It has a section at .025 which talks about consensual tows. The rest of the section applies to nonconsensual tows. So 46.55 applies to all towing. Specifically, .025 talks about consensual tows. If you look at the WACs, the WACs talk about secondary tows. At WAC 204, 91A, 140. Secondary tows are consensual tows. Again, a situation where your car is towed and you go there and say, could you please tow it to my house or your place of business? That's what that is. On the credit card issue, I think that's an apropos example. Why should the state mandate that a tow truck operator only take credit cards? Well, the problem is most people that get their car towed are not that happy to get their car towed. And if you say to a tow truck operator, you have to take a credit card or a check, cannot mandate cash, what you're doing to the tow truck operator is that he has a lien on that vehicle, and you're saying, okay, I'll take your check or credit card. The person could, and a lot of my towers in the affidavits are bankrupt because of this precise problem. People, here's my credit card, here's the check. They walk out the door, stop payment, call the credit card company, I'm not paying it. And they've lost their lien. The vehicle's gone. I mean, I can understand the rationale, perhaps, of enabling the consumer to efficiently get their vehicle, but that's not what the federal law is talking about. So the tow truck has the effect of raising costs. Exactly, because I think everyone's aware credit cards, they charge a percentage, 3 or 4 or 5 percent. So you up the price. By mandating credit cards, actually, you actually up the price. But it does have to do with price, though. Well, the question is, you make an excellent point, but let me answer it simply like this. Now, you just carried yourself a little too far there. Well, I may have. No, but the state's specific. The state already mandates the price. They set the price. They already set it. They set the price of a non-consensual, whether it's a public or private income. Well, let me tell you what happened to me. This was years ago before we could go to the ATM. My car was towed. I went over there at 10 o'clock at night to get my car, and they said, you have to have cash. And I said, well, I can give you a check. I can give you a credit card. No. So I said, well, what's the price? And he told me how much I was going to have to pay. Went back the next morning, and they had added storage charges by the hour. So that had to do with price, too. Perhaps. I don't want to touch that one. I know I'm out of time, and thank you very much. My own towing story. I remember this sign from someplace here in Seattle, this big sign that says, don't argue with me, I didn't tow your car. It says it's behind the lady who takes your money. All right. Thank you very much. The case of Independent Towing v. Washington is submitted.
judges: B Fletcher, Brunetti, McKeown